[Civ. No. 1887. Fifth Dist. Nov. 15, 1974.]

UNIVERSAL BY-PRODUCTS, INC., Plaintiff and Appellant, v. CITY OF MODESTO, Defendant and Respondent.

**COUNSEL**

Loeb & Loeb and Robert A. Holtzman for Plaintiff and Appellant.

Elwyn L. Johnson, City Attorney, and J. David Fitzsimons, Assistant City Attorney, for Defendant and Respondent.

## OPINION

**FRANSON, J.** — Appellant appeals from a judgment dismissing its amended complaint against respondent for damages allegedly arising out of a fraud, a breach of contract and a conspiracy. The trial court sustained a general demurrer to each cause of action. We affirm.

■■■ The basic issue is whether a municipality, having elected to submit to competitive bidding an exclusive contract for garbage collection within the city,[1] and having expressly reserved the right to reject all bids, incurs a liability by way of tort or breach of contract to the low bidder upon rejecting the bids. We hold that it does not.

The salient facts giving rise to appellant's action are as follows: On March 15, 1971, the respondent issued a notice to bidders that it would receive bids for the granting of an exclusive license to provide garbage collection services within the city for a term of eight years. The notice and accompanying specifications and instructions stated that each bid had to be accompanied by a $10,000 bond, that a bid could be withdrawn at any time prior to, but not for 60 days after, the date of the opening of the bids, that the city reserved the right to reject any or all bids, and that the granting of the license would be by resolution passed by the city council.[2] The specifications stated that the award of the license, *if made,* would be made to the lowest responsible bidder taking into consideration the price of the bid, the bidder's experience, the type of equipment available and the quality of personnel.

Detailed operational requirements, schedule of charges and assessments, and statistical information regarding the city were included in the notice to bidders. The notice also cautioned bidders "to carefully examine all of the bid documents, to visit and survey and study the City from the point of view of conducting a garbage collection service, and to become fully informed as to all existing conditions and limitations which might affect his proposal."

---

[1]Health and Safety Code section 4250 authorizes any incorporated city to contract for the collection of garbage under such terms and conditions as the legislative body of the city prescribes. Under this authorization, a city may grant an exclusive license to collect and dispose of garbage without competitive bidding. (*Davis* v. *City of Santa Ana,* 108 Cal.App.2d 669 [239 P.2d 656].)

[2]Section 5-5.26 of the Modesto Municipal Code provides: "Upon consideration of an application or bids for a license, the Council may refuse to grant the requested license, or may grant a license to any such applicant or bidder as may appear from said application or bids to be in its opinion best qualified to render proper and efficient collection service."

The bidders were required to furnish detailed information concerning their organization, personnel, business interests, experience and finances, agreements with others regarding the proposed license, and a detailed statement of the preparations to be made in order to be fully equipped, staffed and ready to commence operations on January 1, 1972.

In its amended complaint, appellant alleged substantially the facts regarding the notice to bidders. In addition, in its first cause of action for fraud, appellant alleged that it was "required to perform a market analysis and other complex studies" in the course of preparing its bid at a cost of about $10,000; that respondent represented it would receive and consider the bids; that in so representing, respondent impliedly represented that it would consider the bids in good faith and that the bids were not being sought "merely to gain plaintiff's research data, expertise, analysis and monetary investment;" that respondent's "implied representation" of good faith was false in that respondent never intended to award the license, and, to the contrary, respondent made the "representations with the intent to deceive and defraud plaintiff and to induce plaintiff to prepare and submit said detailed specifications." Appellant alleged justifiable reliance and knowledge on the part of respondent that appellant would so rely and claimed damages in the sum of $10,000.

In its second cause of action for breach of contract, appellant alleged that the notice to bidders constituted an offer in writing, the terms of which were a request to prepare and submit the bid; that respondent impliedly agreed that it would receive and give the bid a fair and equitable review; that appellant accepted the "offer" by preparing and submitting the bid; that on the day the city opened and rejected all bids, it "materially breached the implied covenant of good faith and fair dealing contained in said contract" by failing to consider in good faith the appellant's bid; that if respondent had performed "said contract," appellant would have been awarded the license; that respondent instead rejected all bids and was negotiating with parties other than appellant for the award of the license. Damages of $10,000 and lost profits of $100,000 were claimed.

In the third cause of action, appellant alleged a conspiracy to defraud appellant. Appellant concedes that this cause of action depends upon the validity of either the first or second cause of action.

Each count alleged the making and rejection of a timely claim against the city.

## Tort Action

■ Preliminarily, we observe that in testing the sufficiency of a pleading against a general demurrer, all well-pleaded allegations, including those that arise by reasonable inference, are deemed admitted irrespective of the difficulty of proof at trial. (3 Witkin, Cal. Procedure (2d ed.) Pleading, § 800, pp. 2413-2414.) The allegations are to be liberally construed with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Mix* v. *Yoakum,* 200 Cal. 681, 687 [254 P. 557].)

Appellant's first cause of action is framed as a tort action for deceit. We first will discuss the sufficiency of the pleading apart from the question of governmental immunity.

■ The essential allegations of a deceit action are a misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance and resulting damage. (4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 446, p. 2711.) ■ The gravamen of appellant's action is that respondent impliedly represented that it would consider the bids in good faith and not merely to gain the benefit of appellant's research and expertise, that this implied representation was false in that respondent never intended to award the license and that appellant justifiably relied on the misrepresentation to its resulting damage.

■ A misrepresentation need not be express but may be implied by or inferred from the circumstances. For example, it has been held that a person who sells securities impliedly represents that the applicable provisions of law have been complied with and the falsity of that representation may give rise to an action for fraud. (*Mary Pickford Co.* v. *Bayly Bros., Inc.,* 12 Cal.2d 501, 519 [86 P.2d 102]; see also 37 Am.Jur.2d, § 42, p. 67.)

■ Moreover, in pleading a fraud action based on the alleged falsity of a representation or of a promise to perform a future act it is not necessary to allege the circumstantial evidence from which it may be inferred that the representation or promise was false—these are evidentiary matters which give rise to the misrepresentation. The only essential allegation is the general statement that the representation or promise was false and that the defendant knew it to be false at the time it was made. (3 Witkin, Cal. Procedure (2d ed.) Pleading, § 585, pp. 2222-2224.)

■ In keeping with these rules we construe the allegation that respondent's implied representation to consider the bids was false "in that said [respondent] never intended to award the license" as meaning that

at the very time it issued the notice to bidders it did not intend to consider the bids in determining if the license should be awarded. If proved, this misrepresentation of an existing fact, i.e., as to respondent's *present intent,* would constitute an actionable deceit, assuming proof of the other requirements.

We believe that such a representation, to the extent we have described it, reasonably and fairly can be inferred from the notice to bidders. Such a representation is in keeping with the high standard of ethics of public officials; a public entity should not be permitted to call for bids if, in fact, *at that time* it does not intend to consider the bids. A businessman is entitled to rely on the good faith of the entity in soliciting the bids.

Contrary to appellant's contention, however, the implied representation does not go so far as to include a promise that the entity will consider the bids in good faith before rejecting them. Such a promise would be contrary to a well-established rule which allows a public body where it has expressly reserved the right to reject all bids, to do so for any reason and at any time before it accepts a bid. If the entity so decides, it may return all bids unopened.

The courts have consistently refused to interfere with the exercise of a public body's right to reject bids, however arbitrary or capricious. Thus, in *Stanley-Taylor Co.* v. *Supervisors,* 135 Cal. 486 [67 P. 783], it was held that mandamus would not lie to force an award of a contract to the lowest bidder for printing forms under an advertisement for bids where the advertisement stated that the board reserved the right to reject any and all bids "if the public good so required." The board rejected all bids for the stated reason that "public policy demands such action be taken." The low bidder sued, alleging the real reason for the rejection of its bid was that it did not have the union label on its printing. The Supreme Court held it could not interfere to substitute its judgment for that of the board; that the board was the final arbiter of the public interest and its decision, however capricious or erroneous, could not be set aside. (See also *Charles L. Harney, Inc.* v. *Durkee,* 107 Cal.App.2d 570 [237 P.2d 561, 31 A.L.R. 2d 457]; *Laurent* v. *City & County of S.F.,* 99 Cal.App.2d 707 [222 P.2d 274]; *Baldwin-Lima-Hamilton Corp.* v. *Superior Court,* 208 Cal.App.2d 803, 816-817 [25 Cal.Rptr. 798].)

The competitive bidding statutes are for the benefit and protection of the public, not the bidders. (*Rubino* v. *Lolli,* 10 Cal.App.3d 1059, 1062 [89 Cal.Rptr. 320]; *Charles L. Harney, Inc.* v. *Durkee, supra,* 107 Cal. App.2d 570, 580.) To countenance a judicial review of the reasons behind a rejection of bids in order to ascertain whether the entity acted in

"good faith" would thwart the right to reject all bids and would subject public agencies to endless lawsuits by bidders contending that their bids had not been given proper consideration.

However, giving to appellant's pleading the liberal construction to which it is entitled, we hold that apart from the question of governmental immunity, it has stated a cause of action for deceit in that it alleges that respondent falsely represented that it intended, at the time it solicited the bids, to consider them in good faith.[3]

We turn now to the question of governmental immunity. The Government Tort Liability Act provides that there is no common law liability of a public entity; liability is wholly statutory. (Gov. Code, § 815.) However, the doctrine of governmental immunity does not protect public entities from liabilities arising out of contract. (Gov. Code, § 814; *Souza & McCue Constr. Co.* v. *Superior Court,* 57 Cal.2d 508, 510 [20 Cal.Rptr. 634, 370 P.2d 338].)

Appellant attempts to avoid the bar of governmental immunity by characterizing the first cause of action as a misrepresentation in breach of contract (Civ. Code, § 1572), relying on *E.H. Morrill Co.* v. *State of California,* 65 Cal.2d 787 [56 Cal.Rptr. 479, 423 P.2d 551] and *Souza & McCue Constr. Co.* v. *Superior Court, supra.* In both of these cases, however, there was an express contract awarded to the plaintiff and substantial work had been done under the contract. In the action before us there are no allegations of an express contract and, as hereafter explained, the facts do not support the inference of an implied contract. The gravamen of the first cause of action is, rather, an allegation of a lack of good faith in the solicitation of bids preliminary to the awarding of a contract; hence, the misrepresentation is in tort, rather than in contract.

Government Code section 818.8 provides: "A public entity is not liable for an injury caused by misrepresentation by an employee of the public entity, whether or not such misrepresentation be negligent or intentional."

Appellant argues that section 818.8 is limited by sections 822.2, 815.2 and *Johnson* v. *State of California,* 69 Cal.2d 782, 800 [73 Cal.Rptr. 240, 447 P.2d 352].

---

[3]Although, as hereafter explained, the entity is immune from liability for intentional misrepresentation of its employees, we believe that in an appropriate case a cause of action for actual fraud might be stated against a public employee on the basis of the allegations before us. (See Gov. Code, § 822.2.) No public employee is a party to the present action.

Section 822.2 states: "A public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation, whether or not such misrepresentation be negligent or intentional, unless he is guilty of actual fraud, corruption or actual malice."

It is apparent that section 822.2 applies only to a public employee, not to a public entity such as the respondent city. The legislative committee comment to section 818.8 draws this distinction. Referring to these sections, Prof. Van Alstyne states: "Public employees may be liable for misrepresentation motivated by actual fraud, corruption, or actual malice . . . ; public entities are wholly immune in such cases." (Cal. Government Tort Liability (Cont.Ed.Bar 1964) § 5.35.)

The relevant part of section 815.2 provides: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." However, section 815, subdivision (b) states that statutory liabilities are subordinated to statutory immunities. Thus, the immunity provisions of section 818.8 would prevail over the general statement of liability in section 815.2.

*Johnson* v. *State of California, supra,* appears to limit the "misrepresentation" contemplated by section 818.8 to interferences with financial or commercial interests. (69 Cal.2d at p. 800; see also *Connelly* v. *State of California,* 3 Cal.App.3d 744, 752 [84 Cal.Rptr. 257].) However, even under this limitation the transaction here alleged (a fraudulent representation in the course of a bidding procedure preliminary to the awarding of a public contract for garbage services) clearly is a commercial transaction within the intendment of section 818.8. Under Government Code section 818.8, respondent is immune from liability for the alleged misrepresentations by its employees. (See *Brown* v. *City of Los Angeles,* 267 Cal.App.2d 849 [73 Cal.Rptr. 364].)

Other statutory immunities are available to respondent. Government Code section 820.2 and 815.2, subdivision (b) provide immunity from civil liability to the entity as well as the employee for acts or omissions of the employee that are the result of an exercise of discretion. (*Rubino* v. *Lolli, supra,* 10 Cal.App.3d 1059.) Government Code section 818.4 provides for immunity from liability for injuries caused by the issuance or denial or failure to issue or deny any license where the public entity is authorized by enactment to determine whether or not to so issue or deny the license. As previously noted, Modesto Municipal Code section 5-5.26 gives the respondent authority to determine whether or not to issue or deny the

license. (See *State of California* v. *Superior Court (Veta)* 12 Cal.3d 237 [115 Cal.Rptr. 497, 524 P.2d 1281].)

The trial court properly sustained the general demurrer to the first cause of action.

### CONTRACT ACTION

In the second cause of action appellant contends that the city's request for bids constituted an offer which was accepted by appellant when it submitted a bid, thereby forming a contract, a term of which was an implied covenant of good faith in receiving and considering the bid and which covenant was allegedly breached by respondent.

Appellant cites four cases for the proposition that there is an implied covenant of good faith and fair dealing in every contract. (*Merritt* v. *J.A. Stafford Co.*, 68 Cal.2d 619 [68 Cal.Rptr. 447, 440 P.2d 927]; *Crisci* v. *Security Ins. Co.*, 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173]; *Comunale* v. *Traders & General Ins. Co.*, 50 Cal.2d 654 [328 P.2d 198]; *San Bernardino Valley Water Dev. Co.* v. *San Bernardino Valley Mun. Water Dist.*, 236 Cal.App.2d 238, 257 [45 Cal.Rptr. 793].) However, in each of these cases there was an express contract from which the implied covenant arose; hence, they are immaterial to the question of whether there is a contract in the present case.

Appellant cites three cases for the proposition that respondent's reserved right to reject all bids could not be exercised arbitrarily. (*Kadner* v. *Shields*, 20 Cal.App.3d 251 [97 Cal.Rptr. 742]; *Weisz Trucking Co.* v. *Emil R. Wohl Constr.*, 13 Cal.App.3d 256 [91 Cal.Rptr. 489]; *San Bernardino Valley Water Dev. Co.* v. *San Bernardino Valley Mun. Water Dist.*, *supra*, 236 Cal.App.2d at p. 257.) Again, these cases involved an express contract and whether a satisfaction clause has been reasonably exercised; they are not pertinent to the question of the existence of a contract.

Basic contract law holds that until such time as a bid is accepted, there is no contractual relationship between the bidder and the entity. (See Civ. Code, § 1586; *Old Town Dev. Corp.* v. *Urban Renewal Agency*, 249 Cal. App.2d 313, 335 [57 Cal.Rptr. 426]; 1 Witkin, Summary of Cal. Law (8th ed.) Contracts, § 99, pp. 102-103.)

In *Old Town*, the Urban Redevelopment Agency of Monterey distributed a developer's packet for a $50 fee containing the conditions and qualifications for proposals by prospective developers of the project. Old Town contended that payment of $50 for the developer's packet initiated a contract whereby the agency and its officers agreed that they would en-

tertain Old Town's proposal and review, evaluate and determine its qualifications solely in respect to the adopted redevelopment plan. From this, Old Town argued that the failure to so consider the proposal was a breach of contract. In response, the reviewing court said: "This analysis disregards the true purport of the terms set forth in the Developer's Packet and the principles of law to be applied. The same considerations which preclude relief in mandamus, prevent recovery in contract. Old Town's proposal was at all times subject to the right of the agency to reject any proposal." (249 Cal.App.2d at p. 335.) The court then said that the law which recognizes that the doctrine of governmental immunity does not apply to an action on a contract does not aid Old Town because "here there was only an offer to receive proposals and no contract was ever effected." (249 Cal.App.2d at p. 335.)

Since there was no implied contract, the trial court properly sustained the general demurrer to the second cause of action.

### ABSENCE OF A PROMISSORY ESTOPPEL

Appellant seeks to avoid the immunity statutes, as well as the want of a formal contract with respondent by urging that we construe the second cause of action as alleging a liability based on a promissory estoppel. It cites *Swinerton & Walberg Co.* v. *City of Inglewood-L.A. County Civic Center Authority*, 40 Cal.App.3d 98 [114 Cal.Rptr. 834], as authority for the proposition that as the low bidder it is entitled to recover the expenses of preparing its bid in reliance on respondent's implied promise that it would consider the bids before rejecting them.

However, promissory estoppel, as a substitute for a formal contract, requires a *promise* by one party upon which another justifiably relies. (*Drennan* v. *Star Paving Co.*, 51 Cal.2d 409, 413 [333 P.2d 757], Rest., Contracts, § 90.) As previously concluded, we cannot construe respondent's implied representation of an existing intent to consider the bids in good faith as implying a promise that thereafter it would consider the bids before rejecting them; such a promise would fly in the face of respondent's express right to reject the bids.

*Swinerton* does not compel a different result. There, a public agency awarded the bid to one other than the lowest responsible bidder. The "implied" promise found to exist was that the agency would award the contract to the plaintiff as low bidder and that the plaintiff relied on this promise in preparing its bid. The court held that the only way to avoid an injustice to the plaintiff was by the "partial enforcement" of the promise. Without commenting on the merits of the holding of the existence of a

promissory estoppel, it is apparent that an inference of a promise to award a contract to the low bidder where the agency misawards the contract to a higher bidder, is far different from inferring a promise to consider the bids before rejection.

Moreover, we see no injustice in requiring appellant to bear the expense of preparing its bid; it entered into the bidding procedure with full knowledge of respondent's right to reject the bids if it should choose to do so. As an experienced business entity, appellant must be deemed to have assumed the risk that respondent might act in accordance with its legal right; such a risk is a cost of seeking to do business with a governmental body.

The order dismissing the action is affirmed.

Brown (G. A.), P. J., and Thompson, J.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.