[No. B181249. Second Dist., Div. Two. Apr. 27, 2006.]

EDUARDO GIL et al., Plaintiffs and Appellants, v.
BANK OF AMERICA, NATIONAL ASSOCIATION, Defendant and
Respondent.

COUNSEL

Daar & Newman and David Daar for Plaintiffs and Appellants.

Barton, Klugman & Oetting and Robert Louis Fisher for Defendant and Respondent.

OPINION

CHAVEZ, J.—Appellants Eduardo Gil (Eduardo) and Rafael Gil (Rafael) appeal from a judgment entered after the trial court granted the demurrer of respondent Bank of America, National Association (Bank) to their second amended complaint. We are asked to determine whether the California Uniform Commercial Code supersedes a payee's common law cause of action for negligence where the collecting bank accepts a check with a missing indorsement. We hold that the negligence cause of action stated here is subsumed in a conversion action dictated by the California Uniform Commercial Code. The judgment of the trial court is affirmed.

## CONTENTIONS

Appellants contend that the trial court erred in granting Bank's demurrer because: (1) the California Uniform Commercial Code does not supersede common law negligence claims where Bank paid on a check with a missing indorsement; (2) under the California Uniform Commercial Code, Bank is liable for conversion; and (3) appellants stated a cause of action for misrepresentation.

## FACTS AND PROCEDURAL BACKGROUND

Appellants filed the operative second amended complaint (SAC) on October 4, 2004, against Bank and other defendants[1] for, among other causes of action, misrepresentation, negligence, and conversion.[2]

The SAC alleged the following. Eduardo and his son Rafael owned a house in Whittier, which was damaged by fire in January 2002. In response to appellants' claim, on March 7, 2002, Allstate Insurance Company drew a check on its account at Bank, in the amount of $50,463.53 made payable to Eduardo, Washington Mutual, and insurance adjuster Claims West Adjusters (the check). Washington Mutual was the lender-lienholder of the Whittier residence. J. Reyes Construction Company (Reyes) contracted with appellants to repair the Whittier residence. Allen Connette (Connette), an employee of Claims West Adjusters, and Marco Galindo (Galindo), an employee of Reyes, falsely represented to Eduardo that upon Eduardo's indorsement, they would present the check to Washington Mutual. After Eduardo indorsed the check, it was accepted by Bank and deposited into Reyes's account at a branch of Bank, without the indorsement of Washington Mutual. Reyes failed to repair the Whittier residence and abandoned the project.

The SAC alleged that as part of a fraudulent scheme, Ezequivel Montejano (Montejano), Bank's branch manager, established a practice of accepting fire insurers' checks and depositing them into Reyes's account at Bank, without the necessary indorsements by lienholder financial institutions named as payees. This happened on at least four separate occasions. The SAC alleged that by accepting the check without the indorsement of Washington Mutual,

---

[1] Defendants New Beginnings Public Adjustment Company, Claims West Adjusters, Glennis Romero, Marco Galindo, Ezequivel Montejano, Jose Guadalupe Reyes doing business as J. Reyes Construction Company, Surety Company of the Pacific, Allstate Insurance Company, Washington Mutual Bank, and Allen Connette are not parties to this appeal.

[2] The other causes of action, not relevant for the purposes of this appeal, were for breach of fiduciary duty, breach of written construction contracts, action on contractor's bond, and equitable relief.

Bank was negligent and also committed conversion within the meaning of California Uniform Commercial Code section 3420.

Bank paid Washington Mutual $50,463.53 in 2004. Appellants alleged that they suffered consequential and special damages, which included giving up the family home.

On December 16, 2004, the trial court granted Bank's demurrer to appellants' SAC.

This appeal followed.

## DISCUSSION

### I. *Standard of review*

The appellate court assumes the truth of all properly pleaded material allegations of the complaint, and gives "the complaint a reasonable interpretation by reading it as a whole and its parts in their context [citation]." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 210 [266 Cal.Rptr. 638, 786 P.2d 365].) When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action; when it is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) If the complaint can be cured, the trial court has abused its discretion. (*Ibid.*)

### II. *Appellants cannot state a negligence cause of action*

#### A. *Common law actions are displaced by particular provisions of the California Uniform Commercial Code*

The purpose of the California Uniform Commercial Code (the Code),[3] is to simplify and clarify the law governing commercial transactions in a uniform manner among the various jurisdictions. (§ 1102.) The Code states that unless displaced by particular provisions, "the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." (§ 1103.)

---

[3] All further statutory references are to the California Uniform Commercial Code, unless otherwise indicated.

In their SAC, appellants prayed for consequential, special and punitive damages. However, as we conclude, *post,* appellants' only remedy lies in an action for conversion under section 3420. Section 3420, subdivision (b) provides that the measure of liability is the amount of the plaintiff's interest in the instrument. In an attempt to circumvent the limited recovery imposed by that section, appellants contend that the Code does not supersede claims of common law negligence, where, as here, Bank paid on a check with a missing indorsement.

■ The definitions set forth in *Roy Supply, Inc. v. Wells Fargo Bank* (1995) 39 Cal.App.4th 1051, 1066–1067 [46 Cal.Rptr.2d 309] (*Roy Supply*) are helpful to our discussion of the statutory provisions governing the check collection process and duties and liabilities between banks and customers. "A 'check' is a draft drawn on a bank and payable on demand. (§§ 3104, subd. (2)(b), 4104, subd. (3).) A 'presentment' is a demand for acceptance or payment of the check made upon the person or entity responsible for payment. (§§ 3504, subd. (1), 4104, subd. (3).) The bank upon which the check is drawn and by which it is payable is referred to as the drawee or 'payor bank.' (§ 4105, subd. (b).) When a maker or drawer issues a check in favor of a payee, that person will generally submit the check to a bank which may or may not be the payor bank. Regardless whether it is also the payor bank, the first bank to which a check is submitted for collection is called the 'depositary bank.' (§ 4105, subd. (a).) If the depositary bank is not also the payor bank, it will present the check to the payor bank either directly or through one or more 'intermediary banks,' defined as any bank to which the check is transferred in the course of collection except the depositary bank and the payor bank. (§ 4105, subd. (c).) In this process any bank handling the check for collection, including the depositary bank but excluding the payor bank, is referred to as a 'collecting bank.' (§ 4105, subd. (d).)" (*Roy Supply, supra,* at p. 1059, fn. omitted.)

### B. *Missing indorsements are addressed in the Code*

Appellants' argument is two-pronged: First, they claim that the Code addresses forged or unauthorized indorsements, but not missing indorsements. Next, they assert that since missing indorsements are not covered by the Code, common law negligence principles apply. They are wrong on both counts.

■ Appellants are incorrect in making the flat statement that the Code does not address missing indorsements. Under section 4207, subdivision (a)(2), customers or collecting banks that transfer items warrant that "[a]ll signatures on the item are authentic and authorized," and the liability of the collecting bank arises from its implied warranty of the indorsement rather

than negligence principles. (*Cal. Mill Supply Corp. v. Bank of America* (1950) 36 Cal.2d 334, 339 [223 P.2d 849].) As Bank asserts, the warranties of section 4207, subdivision (a), apply to missing indorsements. (*Feldman Constr. Co. v. Union Bank* (1972) 28 Cal.App.3d 731, 736 [104 Cal.Rptr. 912] [the warranty provisions of § 4207 apply where the validity of an indorsement is not in issue but the indorsement is missing].)

These warranties, however, do not apply to payees. The warranties are made to the transferee and to any subsequent collecting bank. (§ 4207, subd. (a).) As discussed, *post*, appellants' proper remedy lies in a conversion action under the Code.

### C. *Section 3420 supersedes appellants' negligence claim*

We disagree with appellants' contention that their claim based on a missing indorsement is not covered by the Code. Rather, regardless of whether the indorsement was forged, unauthorized, or missing, their remedy lies in a conversion action.

Section 3420 provides: "(a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by (1) the issuer or acceptor of the instrument or (2) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee."

The allegations of the SAC fall squarely within section 3420. Eduardo, a copayee, received and indorsed the check. He then handed it over to Claims West Adjusters, the second copayee. Galindo, an employee of Reyes, presented the check to Bank and deposited it without the indorsement of Washington Mutual, the third copayee. Thus, Bank made payment to a person not entitled to receive payment and it is liable under section 3420, without regard to whether the indorsement was forged, unauthorized, or missing.[4]

Our conclusion does not end the discussion, because appellants insist that the Code does not supersede their negligence claim in order to avoid the fact

---

[4] The comment to section 3420 addresses one possible situation involving missing indorsements as follows. It explains that where an instrument is payable to two persons, one copayee cannot act without the consent of the other. If one copayee indorses the check and the other does not, the indorsement is not effective, and the depositary bank is liable to the nonindorsing copayee for conversion of the check if he did not consent to the transaction. (23A pt. 2 West's U. Laws. Ann. (2002) U. Com. Code, com. to § 3420, subd. (a), p. 508.)

that they have been fully compensated as defined by section 3420, subdivision (b), which states, "the measure of liability is presumed to be the amount payable on the instrument, but recovery may not exceed the amount of the plaintiff's interest in the instrument." Furthermore, the comment to section 3420 informs us that the depositary bank is ultimately liable in a forged indorsement case and the owner of the check should not be required to bring multiple actions against the payor banks, which in turn would assert warranty rights against a depositary bank. The comment concludes: "If suit is brought against both the payor bank and the depositary bank, the owner, of course, is entitled to but one recovery." (23A pt. 2 West's U. Laws. Ann. (2002) U. Com. Code, com. to § 3420, subd. (c), p. 509.) Appellants alleged in their SAC that Bank subsequently paid Washington Mutual the amount of the original check. Thus, if they were allowed to pursue a negligence claim against Bank, they would receive, at a minimum, a double recovery.

██ Prior to the enactment of the Code, "the true owner of an instrument collected on a forged indorsement could recover in a direct suit against a collecting bank even though the bank had acted in good faith and *with the highest degree of care . . . .*" (*Cooper v. Union Bank* (1973) 9 Cal.3d 371, 380 [107 Cal.Rptr. 1, 507 P.2d 609], italics added.) The payor bank was strictly liable to the true owner; the collecting banks that handled the instrument for collection were strictly liable to the payor bank for breach of warranty of good title. (*Id.* at p. 381.) In *Cooper v. Union Bank*, our Supreme Court explained that the drafters of the Code intended to codify prior California decisions, and under section 3420 (formerly section 3419), a payee could pursue an action for conversion against the collecting bank. (*Cooper v. Union Bank, supra*, at p. 383.) Thus, the drafters intended to meld actions for negligence and conversion into one remedy under the conversion statute. Hence, it is true, as appellants state, that a collecting bank which cashes a check on the unauthorized indorsement of the payee is liable to the payee; but it is through an action in conversion, not negligence. (*Id.* at p. 382, fn. 13.)

In *Equitable Life Assur. Soc. of U.S. v. Okey* (1987) 812 F.2d 906, the payee brought an action for negligence and conversion under the Uniform Commercial Code against a collecting bank for its acceptance for deposit of checks upon an unauthorized indorsement. The Fourth Circuit Court of Appeals persuasively explained that a conversion action under the South Carolina Commercial Code subsumes both conversion and negligence claims based on unauthorized indorsements. In reaching its conclusion, the *Equitable Life* court cited a California case, *Joffe v. United California Bank* (1983) 141 Cal.App.3d 541, 557–558 [190 Cal.Rptr. 443], which held that a customer does not have a negligence cause of action against a depositary bank because actions arising from unauthorized signatures come within the protection of the Code. The *Equitable Life* court stated that "both negligence and conversion require a consideration whether there was payment

over an unauthorized indorsement and evaluation of the reasonableness of the defendant's actions. This duplication suggests that the Code cause of action comprehensively covers the field of legal theories available when a check is paid over an unauthorized indorsement." (*Equitable Life, supra*, at p. 909.) The court also held that the potentially differing remedies between the negligence and conversion claims was an insufficient reason to defeat the legislative intent of codifying common law. (*Id.* at pp. 910–911.)

■ Appellants urge, however, that Bank owed and breached a duty of care to them under common law. We do not agree. Appellants' contention that Bank breached a duty of care owed to Eduardo "by not exercising ordinary care when it allowed [Reyes] to deposit the check in its account 'notwithstanding suspicious circumstances indicative of a fraud' " is directly contrary to case law which holds that "a bank owes no duty to nondepositors to investigate or disclose suspicious activities on the part of an accountholder." (*Casey v. United States Bank Nat. Assn.* (2005) 127 Cal.App.4th 1138, 1149 [26 Cal.Rptr.3d 401] (*Casey*).)

■ *Casey* noted that *Sun 'n Sand, Inc. v. United California Bank* (1978) 21 Cal.3d 671, 695 [148 Cal.Rptr. 329, 582 P.2d 920] articulates the one narrowly circumscribed situation under which a bank has a duty to a nondepositor to investigate a banking situation. Unlike here, that situation exists when large checks, drawn payable to the order of a bank are presented to the payee bank by a third party seeking to negotiate the checks for his or her own benefit. (*Casey, supra*, 127 Cal.App.4th at p. 1151, fn. 3.) In *Sun 'n Sand*, an employee of the plaintiff company prepared checks for its signature, made payable to United California Bank (UCB), drawn on the company's account at Union Bank. The faithless employee altered the checks by increasing the amounts payable, and deposited them into her personal account at UCB. The court determined indicia of fraud was apparent where the depositary bank was presented with checks naming the bank itself as payee, which it deposited into the employee's, rather than the drawer's account. (*Sun 'n Sand, supra*, at p. 692.) The court determined that a common law negligence action could lie where it was not specifically superseded by the Code. (*Id.* at p. 700.) Here, the check was delivered to Eduardo, a copayee, who indorsed the check. Bank then made payment to a person not entitled to enforce the instrument. Appellants' remedy for Bank's acceptance of the check lies only in conversion under section 3420.

We are not convinced by appellants' citation to *In re McMullen Oil Co.* (Bankr. C.D.Cal. 2000) 251 B.R. 558, 572 for the proposition that common law negligence actions are not barred by the Code. In that bankruptcy action, the payee on the checks was debtor McMullen Oil Co. (McMullen). The president of McMullen was authorized to receive, indorse, and deposit checks

made payable to McMullen. He deposited these checks into the bank account of a separate entity, McMullen Oil Co. Pension Plan, without the payee's indorsement. McMullen's successor, McMullen Oil Co. Creditors' Trust (the Trust), filed an action against the bank for conversion and negligence. Unlike here, where the payee's action is for conversion, the bankruptcy court determined that the bank was not liable for conversion under section 3420, because the checks were deposited by a person who was authorized by the payee to enforce the checks. (*In re McMullen Oil Co., supra,* at p. 570.) Acknowledging that the bank does not owe a duty of care to a noncustomer, absent extraordinary and specific facts, the bankruptcy court nevertheless held that the bank had breached its duty of ordinary care to the Trust. In reaching its conclusion, the bankruptcy court relied on *Sun 'n Sand, supra,* 21 Cal.3d 671, which, as discussed, does not apply here, because its holding was limited to a unique fact situation not covered by the Code.

Nor are appellants assisted by their citation to *Mandelbaum v. P & D Printing Corp.* (1995) 279 N.J. Super. 427 [652 A.2d 1266], which held that a payee could state a cause of action for conversion under the New Jersey code. Appellants' citation to the court's statement that payment by a depositary bank of a check with a missing indorsement is contrary to reasonable commercial practices is unavailing, since the court referred to the conversion statute in reversing summary judgment. (*Id.* at p. 439.)

Finally, appellants' citations to cases concerning the rights of a drawer as against a collecting bank and the drawee are not persuasive, since here, the rights of the payees are at issue. *Fireman's Fund Ins. Co. v. Security Pacific Nat. Bank* (1978) 85 Cal.App.3d 797 [149 Cal.Rptr. 883] held that "a noncustomer drawer whose signature was forged on a check drawn upon his account is precluded, by divisions 3 and 4 of the California Uniform Commercial Code, from bringing a direct cause of action based upon statutory or common law negligence against a collecting bank after final payment has been made by the drawee bank." (*Id.* at pp. 829–830.) In dicta, upon which appellants grasp, the court stated that its holding did "not go so far as to preclude a *drawer's* direct cause of action for common law negligence against a collecting bank for the negligent handling of a check bearing a forged indorsement in all cases," when the facts indicate that the bank participated in the acts causing the loss. (*Id.* at p. 830, italics added.) Other cases cited by appellants are similarly distinguishable. (See *Sehremelis v. Farmers & Merchants Bank* (1992) 6 Cal.App.4th 767, 775 [7 Cal.Rptr.2d 903] [plaintiffs who were in same position as drawers of checks could pursue negligence action against collecting banks] and *Joffe v. United California Bank, supra,* 141 Cal.App.3d at p. 556 ["the risk to the drawer is sufficiently foreseeable to impose a duty on the depositary bank 'not to ignore the danger signals inherent' in an attempted negotiation by a third party"].)

■ "[A]bsent extraordinary and specific facts, a bank does not owe a duty of care to a noncustomer." (*Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.* (1996) 49 Cal.App.4th 472, 479 [56 Cal.Rptr.2d 756].) Those special circumstances are not alleged here.

We conclude the trial court did not err in sustaining Bank's demurrer to the cause of action for negligence. Nor did the trial court err in sustaining the demurrer to the cause of action for conversion, since appellants received the full amount of their interest in the instrument.

### III. *Fraud*

■ We disagree with appellants' contention that they stated a claim for fraud. The elements of fraud are a misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance and resulting damage. (*Universal By-Products, Inc. v. City of Modesto* (1974) 43 Cal.App.3d 145, 151 [117 Cal.Rptr. 525].) Fraud causes of actions must be pled with specificity in order to give notice to the defendant and to furnish him or her with definite charges. (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 216 [197 Cal.Rptr. 783, 673 P.2d 660].) In drafting the complaint, " '(a) [g]eneral pleading of the legal conclusion of "fraud" is insufficient; the facts constituting the fraud must be alleged. (b) Every element of the cause of action for fraud must be alleged in the proper manner (i.e., factually and specifically), and the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect.' [Citations.]" (*Ibid.*)

Appellants have failed to state with specificity the first element of a misrepresentation made by Bank. The SAC's allegations of false statements made are attributed to Connette, a principal of Claims West Adjusters, and Galindo, an employee of Reyes. Thus, the allegations that they falsely represented to Eduardo that after he indorsed the check, they would present it to Washington Mutual, do not support a claim against Bank.

We also reject appellants' argument that the SAC sufficiently pleads that Montejano made express or implied misrepresentations to appellants. The SAC makes general and conclusory allegations that Montejano participated in a fraudulent scheme against appellants and that by virtue of his office he made implied misrepresentations that he would follow general banking practice. These allegations are simply not specific enough to show the factual basis of a fraud cause of action. This is not like *Rutherford v. Rideout Bank* (1938) 11 Cal.2d 479, 481 [80 P.2d 978], cited by appellants, where the bank manager made false representations to the plaintiff that if she did not execute an agreement, the bank would foreclose on the mortgage. Nor are we

persuaded by appellants' citation to *Universal By-Products, Inc. v. City of Modesto, supra*, 43 Cal.App.3d 145, where the plaintiff stated a claim for deceit by alleging that at the time the City of Modesto notified bidders and called for bids for garbage collection, the city impliedly represented that it would consider and accept bids in good faith. Appellants have not alleged any implied representations made specifically to appellants by Montejano.

We conclude that the trial court did not err in sustaining the demurrer to the cause of action for fraud. Accordingly, it follows that as to the negligence and fraud causes of action, appellants are not entitled to specific, consequential or punitive damages.

The judgment is affirmed.

Boren, P. J., and Ashmann-Gerst, J., concurred.

Appellants' petition for review by the Supreme Court was denied August 23, 2006, S144000.